Our last case this morning is VPR Brands v. Shenzhen Weiboli Technology Co. Ltd. 2023-1544. Mr. Heyer. Thank you, Your Honor. Eric Heyer on behalf of the defendants appellants. When it enacted the Lamin Act, Congress never contemplated enabling the party to leverage conduct that could be prosecuted as a federal crime to weaponize the Act's trademark protections against its competitors. Yet the plaintiff, VPR, has done exactly that. The Federal Food, Drug, and Cosmetic Act is clear that marketing and selling tobacco products, as defined therein, without an FDA marketing order is both illegal and, indeed, can be prosecuted criminally. Was that question addressed by experts in this proceeding? We called an expert, but our arguments are in no way dependent on the testimony of the experts. Is it disputed that to sell tobacco products, you need to have some form of registration at the FDA? I don't believe that's disputed, Your Honor. It's undisputed. I believe it's undisputed, Your Honor. Your client sells e-cigarettes. Correct, Your Honor. Do they have this FDA marketing approval? So the important fact here, Your Honor, is that... I just need a yes or no answer to that question. They don't, but they were not subject to that requirement when they first started using the mark, Your Honor, because their products fell outside of the statutory definition. Are they exempt now? I'm sorry? Are they exempt now? Now they are not, at this point in time. Your clients are marketing tobacco products without the FDA approval also. No, Your Honor. My clients have been enjoined from using this mark, the market issue. Was that... My clients have been enjoined. We're here about a preliminary injunction from using the market issue, so they are not... Well, the date was for the preliminary injunction. They were at the marketing selling e-cigarettes without having the required FDA approval. Right, Your Honor. And this gets a bit into the intricacies of the Food and Cosmetic Act and the amendments. Right. So, for the injunction, your client would be marketing tobacco products that it has not registered with the FDA. The basic provisions you're accusing them of not having registered under. Your client is having registered either. Well, Your Honor, the salient... No, that's not correct. The salient points are Congress amended the Tobacco Control Act and the Food, Drug, and Cosmetic Act in 2022. My client submitted PMTs, the pre-market applications, within the time frame that was required for those... For the types of products... But the FDA regulation we were relying on for the definition of tobacco products came out in 2016. The deeming rule did, Your Honor, but at that point in time, the underlying statute only defined a tobacco product as... It had involved nicotine that was derived from the tobacco plant, so it did not account for synthetic nicotine. Congress subsequently in 2022 amended the statute to now bring those types of products that had synthetic nicotine within the ambit of the Act as a result of that there was a new deadline to submit these pre-market applications. So in our... It sounds like it's a very complicated regulatory regime. But it's... If you want the, I don't know, the district courts and trademark examining attorneys to go delve into and figure out when the trademark examining attorney's bread and butter is just looking at your F-bar e-cigarette and trying to figure out whether that would create confusion in the marketplace with the registrant's F-e-cigarette and then concluding, yeah, there's a pretty serious confusion there. Your Honor, Article III courts do this all the time. Whenever FDA pursues someone, for example, selling tobacco products that FDA believes are being sold unlawfully, that's up to the Article III judge to decide, to a district court to decide. This so-called unlawful use doctrine that the agency has had for maybe on the order of 70 years, I don't think the Federal Circuit has ever passed on that issue, has it? Has it ever actually made a ruling on whether the Trademark Act requires that use in commerce for a trademark application has to be a lawful commerce activity? Not squarely. It passed. It mentioned it in the Grady-Daffy-Danz case. Which is a concurrent registration use case, very different than what we have here. Correct. But there are multiple, there are multiple provisions of the landmark. I guess what I'm trying to figure out is what is the vitality of this doctrine, where allegedly it's been around for decades and decades. We haven't seen it yet. And in fact, it's been only, I don't know, it's a little used doctrine, it seems to me. And it has a very uncertain status. I haven't seen the agency ever do a rigorous statutory interpretive exercise on where they get this. I mean, the only federal court I've ever seen that's done any kind of real fundamental statutory interpretive exercise was a case from Eastern District of called PacWest. You're familiar with that? No, thank you, sir. And that just concluded, no, there is no authorization under the Trademark Act for such a unlawful use doctrine. And so that's the only treatment. And it makes me wonder whether the 11th Circuit, because we're standing in their shoes for the moment, would really think that this is a viable doctrine. Well, I would say, Your Honor, in the age of state marijuana legalization, if the court is inclined to dispense with that, then we should expect that the Patent and Trademark Office will be authorizing all sorts of trademarks for state legal, and I'm doing air quotes here for the record, marijuana products. Well, they can do trademark registrations for scandalous and moral marks now. We know that, right? It seems like it's a free-for-all now. Well, Your Honor, respectfully, the 9th Circuit, I think, has spoken very clearly on this. And there's actually an old, dated, but it hasn't been cited, so I wanted to cite it for the record, 7th Circuit case called Stravey Divines, Inc., from 1954. It's 217 F. 2nd, 187. Is that in your briefing? It's not. I just, because it's not labeled as unlawful. It came under unclean hands back then, but this is obviously derived from unclean hands. Yeah. So don't you have to have clean hands in order to invoke this doctrine? I'm not convinced you have clean hands. Your Honor, my clients... Not only are you, you know, pretty clearly ripping off the other side's mark, but you also don't have the required FDA marketing, pre-marketing approval. Your Honor, if I can be heard on this, when my client first launched the Elf Bar products, and the record is clear, it was in October of 2021 from the pro-mine junction... After it got its trademark application denied, in light of the registration by the other side, Elf for e-cigarettes. And then it could have filed a cancellation proceeding at that time. It really should have. A rational business person would have. But it chose not to. It just said, oh, screw it. We're just going to keep going and launch our product. Elf Bar. At the time, at that point in time, synthetic nicotine was not subject to the Food, Drug, and Cosmetic Act. In fact, had they submitted a pre-market application at the time, it would have been rejected. FDA would not have accepted because it was not within the scope of a tobacco product, of the statutory definition. Congress subsequently amended, and that is when my client's first claimed rights attached. And then Congress subsequently amended. There was a new deadline to submit PMTAs because of the change in the statutory definition that didn't apply, you know, that broadened it beyond what was applied because of the 2016 deeming rule. And they would move forward then with their own applications. Now, in fact, I would suggest that there is consistency across the circuits. No circuit court has explicitly rejected the unlawful use doctrine. What exactly did the United Circuit do? It seems to me that they surveyed existing and said that we have never applied the unlawful use doctrine and we're not applying it in this case. But it seems like they didn't leave it open for applicability maybe in some other case. Did I read that right? That's correct, Your Honor, because in FN Herstal, what the 11th Circuit pointed out to is that they're really given the facts, the state of the factual record, that it wouldn't have applicability there anyway. So let's agree to agree that it is possible that the 11th Circuit, you know, they haven't denied it. In fact, they seem to embrace the possibility sometime in the future. What would be the role of this court to tell the district court what 11th Circuit law would be or should be? The role of this court is to make its best understanding of what the 11th Circuit would rule standing in the 11th Circuit's shoes. And the 11th Circuit did, in fact, note that in 1984, the Southern District of Florida did recognize the unlawful use doctrine in a case of law predated by decades, FN Herstal, as well the Davidoff case as well, which happened to be an open case. Is it possible in this case to separate the unlawful consideration of the unlawful use doctrine to separate that from consideration of the injunction, that the four elements of the injunction? Your Honor, it goes to likelihood of success on the merits, but Your Honor raises an excellent point, which is an injunction and a preliminary injunction is by its very nature an equitable remedy. And so, of course, the plaintiff must come with unclean hands. Exactly. That's your problem there, with unclean hands. Respectfully, Your Honor, I disagree. And that's when that doctrine applies. And Your Honor, my client's products, when they first started using the mark, they're coming after my clients for hundreds of millions of dollars in proceedings below. Well, the entire, all of our evidence, I mean, this is all, this is all a... Not their hands, your hands. I don't think they presented any evidence about the... I'm sorry? Was it argued? I don't believe so, Your Honor, not that I can recall. I think your client's nodding. When he's saying yes, you're saying no. Well, Your Honor, in fact, Your Honor, the Chinese company that was selling these products is not even a named defendant in this case. Okay. That's fair enough. So, not adopting here would put, as the Cree Agri Ninth Circuit said in Cree Agri, would create the anomalous position of the government extending the benefits of trademark protection to sellers based specifically on the seller's violations of that government's own laws. It would also reward the hasty at the expense of the diligent. And practically speaking, talking about how the TTAB operates... Have you ever read the Law Review article in the Vanderbilt Law Review called Unauthorized and Unwise, the Lawful Abuse Doctrine and Trademark Law? I'm familiar with it, Your Honor. Okay. So, that goes on for 80 pages and does a highly rigorous analysis for why this lawful abuse doctrine is an unauthorized doctrine. I understand, Your Honor. But practically, here's a practical problem with this. Looking at the district court's opinion, the district court says, well, this should be up to the TTAB. One should go and file a cancellation proceeding. The problem is, practically speaking, under 37 CFR 2.117A, the TTAB always stays a cancellation proceeding in deference to a district court infringement proceeding. Always? Well, as long as the district court proceeding is pending first. So, practically speaking... Even when there's no validity question before the district court? I mean, here we have a district court that says, I'm not going to consider the unlawful abuse doctrine. What would stop you from that point in filing a cancellation proceeding? We did. And it was stayed, Your Honor. And it was stayed in deference to the district court. And here's the practical problem. There is no possibility until you get to post-judgment, which in many instances, including for some of the appellants here, would destroy their businesses to ever have this issue passed on by the TTAB or any other forum. It completely strips them of a forum to litigate the validity of the underlying registration. Why didn't they file the unlawful abuse doctrine cancellation proceeding after they got their trademark application refused? I don't know, Your Honor. That was before we were involved with representing them. So I don't know. That's where you'll end your rebuttal time if you wish to save it. Yeah, I'll stand on my rebuttal time there. All right. Thank you. Mr. Rothman. Let me first say I think it was inappropriate of you to be nodding and answering the court's question during someone else's time. Your Honor, I apologize. Proceed. Thank you. So, Joe Rothman for BPR Brands. May it please the court. Indeed, these issues were presented to the district court. The issue was argued that it was paradoxical that a product that was focused solely on synthetic nicotine was arguing that our client's product, which is not focused on synthetic nicotine entirely, can be used for many other things. It can be used with hemp oil or with clover oil or with lots of other oils that are vaporized for aromatherapy purposes or for other purposes. And so, factually... Aromatherapy? You're using e-cigarettes for aromatherapy? It is actually being used for aromatherapy. There are many of these products on the marketplace and... No, let's just get to the point. You didn't get the pre-marketing approval, did you? No, Your Honor, I got it. Because the pre-marketing approval was unnecessary for a product which is sold empty. It is not sold in a disposable containing nicotine the way that the defendant's products are sold. And indeed, the pre-market approval requirements are... You're saying under the 2016 FDA regulation, your product doesn't qualify? In fact, the testimony below was that their expert had never seen a product like ours that had ever been the subject. But you said there have been warning letters that have been issued to other companies. But never a warning letter exactly like our client's product. And certainly never any FDA action concerning a product like our client's product. The situation was and is that these regulations are exactly the sort of regulations that were at issue in FN Herstal. And if this Court stays consistent with its decision in Panduit, then this Court would need to affirm, because the 11th Circuit on facts that are indistinguishable except for the products and the particular regulation, but in all other ways similar to here, has indicated it wouldn't apply in a fact situation like this, the unlawful use doctrine. Wait a second. You're saying we're guided by the facts of FN Herstal? No, I'm not saying that, Your Honor. What I'm saying is that this is extremely fact-specific, right? That the standard, I'm sorry, the standard... That's not the analysis that the district court judge used. The district court judge used, it was a law-based question. Yes, if the 11th Circuit endorse and apply the unlawful use doctrine, would it recognize it or not? And she concluded, no, it would not. That's right. So it had nothing to do with, well, what are the facts, what are the... No, it had nothing to do with that. It was a pure legal question. Well, I think that the facts were significant to the court, because in FN Herstal, as in here, we were dealing with not a statute, but we were dealing with a regulation, and that regulation is subject to change. It's subject to review. In fact, the FDA regulations concerning e-cigarettes have been found not to have been adopted in a manner that is consistent with the requirements of the Administrative Procedures Act by other circuit courts, and to apply this sort of regulation and for a district court to make a determination, not the ultimate authority on it, which would be the FDA or the DOD in the case of FN Herstal, but for a district court to make a determination of unlawful use would not be appropriate under the facts as presented and also the application of the unlawful use doctrine to a case like this presents all sorts of problems, because you have a situation where the facts have indicated that it is unclear whether the use in question is in fact unlawful or not. Now, you know, in addition, Your Honor, we have a situation where effectively allowing the finding of unlawful use would have created a private right of action where money exists. There is no situation under which a lieutenant can come in and sue to stop the marketing of a particular product because it is their view that it violates the Food, Drug, and Cosmetic Act. That is something that is specifically carved out of the FDA Act. There is no private right. A preliminary injunction is an equitable remedy. Yes. And the Supreme Court has given us pretty high standards for upholding it, and generally speaking, in the field of patents when there is a real question about infringement and validity. And here, if there was a non-frivolous allegation of illegality, shouldn't that be enough to defeat the preliminary injunction? A non-frivolous allegation of illegality? No, Your Honor. I think that there needs to be a demonstration by the party that is challenging the mark and its validity. I think there needs to be a demonstration, and in fact, the challenger, as the district court noted, must prove it by clear and convincing evidence. If we are in a patent framework, one has to prove the invalidity of the patent by clear and convincing evidence to defeat a preliminary injunction? Well, what the district court said below, Your Honor, and I don't have the case law she was relying on in front of me, but at page 7 of her decision, she indicated that a challenger to the mark has to prove by clear and convincing evidence that there's been a finding of noncompliance with the law. But this isn't just challenge to the mark. This is asking for a preliminary injunction. Okay. Well, what I'm saying, Your Honor, is that the plaintiff comes forward with the mark. The plaintiff has a registration. The registration provides a presumption of validity. There is nothing to indicate that the plaintiff's use of the mark or the plaintiff's application of the mark to their own goods is unlawful. Now, Your Honor says there's this accusation of illegality, and is the accusation of illegality, as long as it's non-frivolous, to use Your Honor's words, is that enough? My response to that, Your Honor, is no, that isn't enough, because it would require that there be a real showing, a showing of evidence that the plaintiff's use of the mark was in fact illegal. And the district court said below, and again, it's on page 7 of her decision, that that showing must be by clear and convincing evidence that there has been a finding of noncompliance with the law by a court or a government agency or a per se violation of the statute. And what counts, what my friend is arguing is that there has been a per se violation of the statute by my client. And what we are here arguing to Your Honors is that, no, there has been no such showing of a per se violation. In fact, even if it was true that our client's product was not approved, and that was necessary, and the law applied on all fours, in fact, the trademark was an issue for precisely the thing that this law is intended to regulate. It applies to more uses than simply the cigarette uses. We have also demonstrated that our client's use of this product hasn't at all times been consistent with the law. And there hasn't been any demonstration by the defendants here that we have not complied with any court's determination, that we have not complied with a government agency's determination, that we have committed a per se violation of the statute that has not been demonstrated. So the argument is that this product that my client markets, it should be a warning letter. Well, there can be arguments on both sides as to whether that's true or not. But certainly, as of today, there has been no such warning letter. There has been no such determination by a court. There has been no such determination by a government agency. There has been no such finding of noncompliance. So as Judge Chen pointed out, this means that the unlawful use doctrine is in, I think, difficult waters to navigate. Because what exactly does it mean for a use to be unlawful? This is foundational Section 1 of the Lanham Act. I'm saying that it doesn't apply in this case. The doctrine doesn't apply. I'm saying that's my number one argument, is that it doesn't apply in this case. However, number two, even if it does apply, it doesn't apply to my client's product. And number three, even if it applies to my client's product, that this court, seeing as it does under Panduit, must look at FN Herstal and say, well, the Eleventh Circuit, in factually similar circumstances, refused to apply it. And so we are consistent with Panduit and the concepts that under Panduit, which, you know, go back to Erie. And we will not interpret what the Eleventh Circuit would do differently than FN Herstal interpreted it. You would agree that the Eleventh Circuit left the door open on the possibility of the doctrine applying in another case? I think that the Eleventh Circuit did what any in a very well-reasoned panel of any other circuit would have done under those circumstances, which is look at the facts and say, well, the facts really don't support the application here. And so we don't have to decide this issue now. And we're not going to apply it here, certainly. And so we will defer that issue. But if they could have said the doctrine does not apply in the Eleventh Circuit? They absolutely could have said this doesn't apply in the Eleventh Circuit, and they absolutely could have said that we apply this to everything in the Eleventh Circuit. But what they did was they looked at the facts. The facts did not present a compelling case, even if it was a doctrine they wished to adopt. And so they determined we shall not adopt this doctrine in this case because it appears to us not to be applicable and left it at that. But that's a very strong indication for purposes of this Court's work that adopting it here would potentially run afoul of the underpinnings of this Court's jurisdiction. Which is to be consistent with concepts of federalism and not to be deciding cases in a way that runs afoul of the right of the circuit. Judge, what do we do with the balance of harms element in the preliminary injunction as issued in this case? Given the argument we had here this morning, non-registration of two companies of tobacco products, now explain to me the balance of harms element. Well, the balance of harms weighs in favor of the injunction that was issued being affirmed. Because for the reasons that the district court reasoned below, I mean, once we got past the, in the district court's decision where she dispensed with the unlawful use doctrine, the rest of her, of the district court's reasoning, and my time is up, may I finish my question? Certainly. The answer? Thank you. The rest of the district court's decision was, you know, a very well reasoned analysis of the balance of the harms as weighing in favor of the issuance of the injunction. My clients had been, had used this trademark for many years. The products were identical, if not highly, highly similar. They were in the same market. They were in the same, you know, consumers, sold by the same stores for similar things. So I do think that there's a separate, independent basis. Nor do I think that the defendants argue a separate basis for purposes of reversal. I think they argue the only basis, which is the unlawful use doctrine. Thank you, Your Honor. And I do apologize again to the extent that my head nodding appeared in some way to be inconsistent with the requirements of this Court, something that I take very seriously. And I will confirm my behavior to that in the future. I appreciate the comment. Mr. Herr has two minutes. Thank you, Your Honor. On the balance of harms point, the Court should vacate the injunction. The plaintiff came up on clean hands. Secondly, counsel stood here and said that because his product was sold empty without any nicotine-containing e-liquid, marketing authorization was not required. I'd point the Court to Appendix Pages 235 to 248, which include warning letters from FDA to other open-system products, electronic cigarettes without any e-liquid in them, that FDA sent warning letters on and said these products appear to violate the Food, Drug, and Cosmetic Act. That is simply not the case in terms of how FDA enforces. And the products, because they were not on the market by August 8, 2016, they don't qualify for any sort of deferred enforcement of BPR's products. There's also, counsel argued that there were FDA regulations governing tobacco products that violated, that were found by other circuits to violate the Administrative Procedure Act. There's one case that comes out of the U.S. District Court for the District of Columbia that I believe is currently up on appeal, if it's even been appealed, that relates to the deeming rule as it applies to premium cigars. That's it. In fact, the FDA, the deeming rule was challenged as to its applicability to electronic cigarettes, and it was specifically upheld by the D.C. Circuit back in, I believe, 2018. Do you have that opinion on Chevron deference? Off the top of my head, I don't. I don't, Your Honor. I'm not sure. This was an issue that was briefed. In terms of, again, this is an affirmative defense. That's all we're asking the Court to rule on. This is not a private cause of action. This isn't even an action to cancel or a request to cancel. It's not, we're not asking for ruling on a counterclaim or a cancellation proceeding before the TTAB. This is simply an affirmative defense in use of this doctrine as a defensive shield, not as an offensive sword. And, again, my final point, if I could just make it briefly, is there was clear and convincing evidence here. Our case relies, in large part, on VPR CEO's own testimony that he expected their products would be used with nicotine-containing e-liquids. The word expects is exactly what's in the FDA regulation to define what is a component or part of a tobacco product unless a tobacco product is subject to the Act. Thank you, Your Honor. I will give counsel a case to submit here, and that concludes today's argument.